## Hart *et al. versus* Girard Borough.

1. Hart was burgess of Girard borough and Wright was a councilman; in April 1863 the borough resolved to pay $300 each for recruits under the call for July 1864: it was agreed that "each member should act as agent and hire a man if he could." Hart and Wright procured seven recruits, but before they were mustered in the quota was filled; they then transferred the recruits to another district at a higher price. In a suit by Girard for the difference, the plaintiffs' point was: "The council were ex officio agents of the corporation, they may act as a body corporate, they may agree that each may represent the whole in any particular transaction, and if the council did so agree among themselves their authority was ample and both are bound by the transaction in putting the men in." The court affirmed the point, "provided that was a general authority for all drafts and not confined to the particular one." *Held* to be correct.

2. Hart *v.* Girard, 6 P. F. Smith 23, recognised.

November 22d 1869. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Erie county:* No. 157, to October and November Term 1869.

This was an action on the case brought September 30th 1865, by the Borough of Girard against Leffert Hart and L. S. Wright to recover the difference between the amount paid by the defendants for seven recruits alleged to have been procured by them as agents of the borough and the amount received by them from another district to which they transferred the recruits. These recruits were for the call of July 18th 1864.

The case has been previously considered in the Supreme Court and is reported in 6 P. F. Smith 23.

Hart was the burgess and Wright was one of the council of the borough of Girard in 1864. On the 23d of April 1864 the council resolved to fill their quota for a draft impending at that time and "it was agreed that each member was to act as agent and hire a man whenever he could * * * and to do so without calling the council together."

Thomas McClure, who was a member of the council, testified for the plaintiffs that at a meeting of the council in reference to raising recruits: * * * "I told them I was going away and they must attend to it, they said we must all attend to it; that I must look out in Buffalo and they would look out here; and we agreed to stand by each other in all acts in filling that quota, they agreeing to keep me posted as to what they did, and I them: I heard of the putting in of these men; we never had any conversation in regard to putting in these men, but I approved of it because I thought it was right; it was the understanding that we should fill the quota of the calls then made, but no further calls were provided for."

On the 20th of July 1864, James Webster and Asa Battles were appointed agents to go to the South to procure recruits.

[Hart *v.* Girard Borough.]     .

On the 13th of August 1864, whilst their success was uncertain, the defendants procured seven men at $300 each. On the 6th of September information was received from Webster and Battles, that they had procured a sufficient number of men to fill the quota of the borough; the defendants then transferred the seven men to Girard township, receiving $500 for each of them.

The plaintiffs claimed that the defendants acted as agents for the borough and were accountable to them for the increase of price; the defendants alleged that in procuring the men they acted for themselves and were entitled to any profit made in the transaction.

Both parties gave evidence to maintain their respective positions. The evidence and facts above stated sufficiently exhibit the case.

The plaintiffs' third point was :—

"The burgess and town council of a borough are ex-officio agents of the corporation; that they may act as a body corporate, and they may agree that each may act for and represent the whole in any particular transaction, and if the town council did so agree among themselves with regard to the enlisting of men, as testified by Thomas McClure and others, their authority was ample, and both the borough and the defendants were bound by the transaction of the defendants in putting in the men."

The court answered this point in the affirmative, "provided that was a general authority, applicable to all drafts, and not confined to the particular one pending when the agreement was made."

The defendants' 4th and 5th points were :—

"4. The conversation had among the members of the council in the spring of 1864, referring specially to the calls that had then been made, could not be applied to the call subsequently made in July 1864, under which these men had been enlisted.

"5. That if the defendants had any authority, by virtue of the conversation mentioned in the last point, and as testified to by Thomas McClure, to enlist men and pay them bounties, such authority was superseded by the appointment of Battles and Webster, by resolution of council, as special agents to go South and fill that quota."

The answers were :—

"The authority, if any, which the defendants had to enlist the men in question, was not derived from any conversation proved by McClure or any other witness, but from the authority conferred by the Act of Assembly of March 16th 1864, conferring power on boroughs to fill quotas, the resolution of the burgess and council to do it, and the general agency of said officers, by virtue of their office, to execute the decrees and discharge the duties of the borough under the supposed exigencies of the case. The conversations referred to are only evidence of how the defendants

. [Hart *v.* Girard Borough.]

may have regarded their own act, or supposed it would be regarded by their associates. If they knew it would be approved by the other councilmen, it would furnish a strong motive for its performance as agents of the borough. But if they were not assured of its ratification or knew it would not be, it would furnish a strong reason for believing that they hired the men on their own responsibility, not caring whether the act was ratified or not. The conversation or agreement referred to, if proved to your satisfaction, tends to throw light on the motive or interest of the defendants."

The court further charged :—

" Unlike the case at the former trial of the cause, there is now some conflicting evidence as to the capacity in which the defendants acted when securing the enlistment of these men.

" It seems to me the fact of agency or no agency will have to be determined as a question of intention at the time, on the part of the defendants. The fact that they were, one the burgess and the other a councilman of the borough, is an important one in this connection. There was no one else there to consult, no one but themselves from whom an appointment or authority as agents could be obtained. This fact does not seem to have attracted the attention of the Supreme Court in the review of the case.

" As such, they were the representatives, and, to a certain extent, the agents of the borough. It had already resolved, in its corporate capacity, to fill the quota. These men were but executing its behest. The mere appointment of two men to go South to look after recruits, was not a consummation of the purpose. It was but an effort towards it.

" How then are you to determine whether these defendants were agents or not ? Was it necessary to pass and record a resolution, as councilmen, appointing themselves agents of themselves to do this thing ? [It seems to me the only way to solve the problem of agency is to inquire and ascertain from the evidence what was their intention. How did they mean to be understood by others as acting ? Did they intend to have these men credited to the borough of Girard, and that the borough should pay them their price, or did they intend to pay the money themselves, without recourse on any one, and hold them, to be transferred at their pleasure when they could dispose of them to the best advantage ? Did they intend to act as individuals or as agents and representatives of the corporation, in hiring these men ? As was their intention, so was their character and capacity. If they were agents of the borough, acting in good faith for its interests, according to their best judgments, the corporation would be bound by their action, even though it had turned out that the men were not needed."]

The verdict was for the plaintiffs for $1757.

[Hart v. Girard Borough.]

The defendants took a writ of error, and assigned for error, amongst others, the answers to the above points and the part of the charge in brackets.

*Walker* and *Cutler*, for plaintiffs in error, cited Cooper v. Lampeter, 8 Watts 125; Dull v. Ridgway, 9 Barr 272; Rogers v. Rogers, 7 Cowen 526; Hart v. Girard, *supra;* Pennsylvania Railroad v. Zebe, 9 Casey 323.

*S. E. Woodruff*, for defendant in error: Pottsville v. Norwegian Turnpike, Angell & Ames on Corp., § 294, 2 Hilliard on Torts 427; Story on Agency, §§ 336, 211, 214; Kimmel v. Stoner, 6 Harris 157; Brightly's Eq., §§ 97, 98; 1 Parsons on Contracts 86, 141; Fisk v. Sarber, 6 W. & S. 21.

The opinion of the court was delivered, July 7th 1870, by

READ, J.—This case has already been before this court and is reported in 6 P. F. Smith 23. The error upon which the judgment was reversed, was that the question of agency was not submitted distinctly to the jury to be passed upon by them. "For this reason," say the court, "and *for this reason alone*, the judgment must be reversed. There is no error in any other part of the record."

In discussing the question of agency the first point was, were the alleged agents legally authorized to act for the borough authorities.

The third of the plaintiff's points was in these words: "That the burgess and town council of a borough are ex-officio agents of the corporation: that they may act as a body corporate, and they may agree that each may act for and represent the whole in any particular transaction, and if the town council did so agree among themselves with regard to the enlisting of men as testified by Thomas McClure and others, their authority was ample, and both the borough and the defendants were bound by the transaction in the putting in of the men."

The court said: "This is answered in the affirmative, provided that was a general authority applicable to all drafts, and not confined to the particular one pending when the agreement was made."

The law as stated in this point and answer was affirmed by this court in substance in 6 P. F. Smith, and we see no reason to doubt its correctness.

Nor do we see any error in that part of the answer to the fourth and fifth points of the defendants'. "The authority, if any, which the defendants had to enlist the men in question was not derived from any conversation proved by McClure or any other witness, but from the authority conferred by the Act of Assembly of March 16th 1864, conferring power on boroughs to fill quotas, the resolution of the burgess and council to do it, and the general

[Hart *v.* Girard Borough.]

agency of said officers by virtue .of their office to execute the decrees and discharge the duties of the borough under the supposed exigencies of the case."

This language is explained by the succeeding part of the same answer: " The conversations referred to are only evidence of how the defendants may have regarded their own acts or supposed it would be regarded by their associates. If they knew it would be approved by the other councilmen it would furnish a strong motive for its performance as agents of the borough. But if they were not assured of its ratification or knew it would not be, it would furnish a strong reason for believing that they hired the men on their own responsibility, not caring whether the act was ratified or not."

Leffert Hart was burgess, and L. S. Wright one of the town council of the borough of Girard; a draft was impending, and there were seven men who were willing to volunteer for one year for a bounty of $300, and, being urged by several citizens, the said Hart and Wright on the 13th August 1864 engaged the men, arranged to pay them the stipulated sum and started with them to Erie, and had them regularly enlisted. There were separate recruiting papers for each man. The papers were made to " Girard," one to " Girardtown" and the rest four or five to " Girard Borough."

On the 7th September 1864, the defendants sold these seven men for $3500 to Girard township and they were credited to it.

On the 20th July 1864 James Webster and Asa Battles were appointed recruiting agents to go South and procure volunteers to fill the quota of Girard borough, who on the 6th September telegraphed Hart from Vicksburg that they had succeeded in raising men enough to fill the quota, who were enlisted for three years, which men (seventeen in number) were afterwards duly and properly credited so that the quota of the borough was filled and three men to spare.

During the uncertainty as to success, in recruiting in the south, outside of our state, which continued during nearly seven weeks, these seven men were enlisted in Pennsylvania, and the question is, whether they were so enlisted by the defendants as the agents of the borough, or in their individual capacities.

The learned judge in his charge put this question to the jury in the following clear and pertinent language:—

" Now it is for you to determine from the evidence whether the defendants were the agents of the plaintiffs, and acted as such in the enlistment of these seven men, or whether it was done by them individually, and on their own personal responsibility." The jury have decided this in favor of the plaintiffs by their verdict.

Judgment affirmed.

Thompson, C. J., dissented.