ROSENBLUM v. UBER.

In re B. M. STERN CO.

(Circuit Court of Appeals, Third Circuit.   April 2, 1919.)

No. 2407.

1. LANDLORD AND TENANT ⬥248(3)—RENT—PRIORITY—EXECUTION.

A provision in a lease that if default be made in any of its conditions, or if execution be issued against the lessee, or if assignment be made for the benefit of creditors, rent for the entire balance of the term shall at once become due and payable, and a landlord's warrant may issue forthwith, is, under the law of Pennsylvania, not against public policy, and will be sustained to the extent of giving the landlord priority for one year's rent out of proceeds from an execution sale.

2. BANKRUPTCY ⬥325—LANDLORD'S CLAIM.

If a landlord obtains by an action of replevin a part of his rent from the goods of a subtenant upon the premises, his claim against the bankrupt estate of his tenant should be reduced by the amount he so received.

3. BANKRUPTCY ⬥255—LEASES—ACCEPTANCE OR REFUSAL BY TRUSTEE.

A trustee in bankruptcy may at his option assume a lease of the bankrupt, or decline to assume it, as an asset of the estate, and he has a reasonable time within which to exercise this option, and if he considers the lease of value, and assumes it, the bankruptcy operates like any other assignment, and the bankrupt is released from all liability for rent thereafter, but if he deems the lease of no value to the estate, and refuses it, this does not avoid the lease, but leaves the bankrupt lessee liable as before.

4. BANKRUPTCY ⬥255—LEASE OF BANKRUPT—SURRENDER.

A trustee in bankruptcy may, if the landlord consents, surrender a lease of the bankrupt, whereupon the landlord regains possession of the premises, and all unmatured obligations between the parties depending upon the continuance of the leasehold estate are terminated; but in surrendering the lease the trustee has no greater right than the tenant, had he attempted to make a surrender before bankruptcy.

5. LANDLORD AND TENANT ⬥109(4)—LEASE—SURRENDER—ACCEPTANCE OF KEY.

Where a landlord accepted a key from a tenant "upon the express conditions that he would care for the building and rent it, if possible, for the benefit of the estate" of his tenant, who was a bankrupt, he did not thereby accept a surrender of the lease, and he could hold the tenant liable for the difference between the rent provided for in the lease and rent actually collected after taking possession.

6. BANKRUPTCY ⬥255—LEASE OF BANKRUPT.

Where a trustee in bankruptcy attempted to surrender leased premises to the landlord, but the landlord accepted only upon the express condition that he would care for the building and rent it, if possible, "for the benefit of the estate," the effect of the transaction, although the trustee thought that he had surrendered the premises and terminated the liability of the estate under the lease, was a refusal to accept and administer the lease as an asset of the estate, and left the obligation of the bankrupt tenant under the lease just where it was before the attempt to surrender.

7. BANKRUPTCY ⬥350—CLAIMS OF LANDLORD—PRIORITY—"EXECUTION."

A landlord, who had, at the time of filing petition in bankruptcy, a landlord's lien, or the right to distrain upon goods and chattels upon premises demised to the bankrupt, and who had not accepted a surrender of the lease subsequently tendered by the trustee, is entitled, under Bank-

ruptcy Act July 1, 1898, § 64b, cl. 5 (Comp. St. § 9648), to priority of payment of rent in arrear not exceeding one year out of the proceeds of the sale of such goods by virtue of the Pennsylvania statute (Act June 16, 1836 [P. L. 777] § 83), granting a priority for such rent in the distribution of the proceeds of execution sales; a bankruptcy proceeding being in the nature of an "execution."

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Execution.]

8. BANKRUPTCY ⊕⇒318(4)—LANDLORD'S CLAIM.

In Pennsylvania, a landlord, in bankruptcy proceedings, who has refused the trustee's tender to surrender a lease, but has accepted the key and has taken possession of the building for the purpose, expressly declared at the time, of protecting and caring for the property and rerenting it for the benefit of the estate, is entitled in the distribution of the proceeds arising from the sale of goods and chattels on the premises, first, to payment of rent for one year, and, second, to payment of rent for the balance of the term, under proof of claim filed as a general creditor, when under the terms of the lease all rents were due at the date of the institution of bankruptcy proceedings; but in such case the trustee in bankruptcy is entitled to all the rents collected by the landlord while so in possession of the premises.

Petition to Review and Revise an Order of the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

In the matter of the B. M. Stern Company, bankrupt. Petition by Samuel Rosenblum against William J. Uber, trustee, to review and revise an order of the District Court of the United States for the Western District of Pennsylvania sustaining findings of the referee. Reversed, with instructions.

H. A. Wilkison, of New Castle, Pa., for petitioner.
Leonard M. Uber, of New Castle, Pa., for respondent.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This petition raises two questions of law on an agreed state of facts. The first question is: Whether a landlord, who had at the time of filing the petition in bankruptcy a landlord's lien or the right to distrain upon goods and chattels on premises demised to the bankrupt, and who had not accepted a surrender of the lease subsequently tendered by the Trustee, is entitled under section 64b, cl. 5, of the Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 563 (Comp. St. § 9648), to priority of payment of rent in arrear (not exceeding one year) out of the proceeds of the sale of such goods, by virtue of the Pennsylvania statute (Act of June 16, 1836 [P. L. 777] § 83) granting priority for such rent in the distribution of proceeds of execution sales. This question—which is the important one in the case—is dependent somewhat upon the determination of the second question, which is: Whether in Pennsylvania, a landlord, who has refused the Trustee's tender to surrender the lease, but has accepted the key and has taken possession of the building for the purpose, expressly declared at the time, of protecting and caring for the property and rerenting it for the benefit of the estate, is entitled, in

the distribution of the proceeds arising from the sale of goods and chattels on the premises, first to payment of rent for one year, and second, to payment of rent for the balance of the term under proof of claim filed as a general creditor, when under the terms of the lease all rent was due at the date of the institution of bankruptcy proceedings.

[1] The relevant facts are these: At the time the petition in bankruptcy was filed (December 30, 1916), the petitioner was the owner of a building occupied by the bankrupt under a lease for three years, from April 1, 1916, at a total rent of $9,225.00, payable at the rate of $256.25 monthly in advance. The lease provided that, if default be made in any of its conditions, or if execution be issued against the lessee, or if assignment be made for the benefit of creditors, rent for the entire balance of the term shall at once become due and payable, and a landlord's warrant may issue forthwith. It is conceded by both parties that such a provision in a lease is, under the law of Pennsylvania, not against public policy and will be sustained to the extent of giving the landlord priority for one year's rent out of proceeds from an execution sale. Platt Barber Co. v. Johnston, 168 Pa. 47, 31 Atl. 935, 47 Am. St. Rep. 877; In re Keith-Gara Co. (D. C.) 203 Fed. 585; Id., 213 Fed. 450, 136 C. C. A. 96. And it is conceded further that on the filing of the petition in bankruptcy in this case, the rent for the balance of the term became due and payable.

[2] The receiver, who afterward became the Trustee, took possession of the building and its contents. The building contained goods and chattels belonging to the bankrupt and also goods and chattels belonging to the bankrupt's sub-tenant, Sperry-Hutchison Co. This concern immediately obtained a rule upon the Trustee to turn over the goods belonging to it. On this rule, Sperry-Hutchison Co. prevailed but before it got its property, the landlord levied on it by landlord's warrant for the full rent due for the balance of the term. The Sperry-Hutchison Co. finally regained possession of its property by replevin. There is nothing in the record which shows what happened thereafter. We allude to this phase of the case only to dispose of it as not bearing on the questions of law raised for revision, for, manifestly, if the landlord obtained by this action of replevin a part of his rent from the goods of another upon the premises, his claim against the estate would be reduced by the amount he so received, and a demand by Sperry-Hutchison Co. for the amount which it had thus contributed to the payment of the bankrupt's rent would, in all probability, appear in the form of a claim duly filed against the estate.

We shall address our discussion solely to matters between the tenant and his estate in bankruptcy on the one hand and the landlord on the other. The receiver came into possession of the premises on December 30, 1916, and occupied them for the months of January, February, and March, 1917. He sold the bankrupt's goods and chattels found on the premises and liable to the landlord's distress, and converted them into money. This money now constitutes the fund for distribution. From this fund he paid the landlord $150.00 on account of rent in arrear for November and December, 1916, leaving due for these months a balance of $387.50, and paid $768.75 for use and occupa-

tion of the premises during the months of January, February, and March, 1917, declining later to pay more on the ground. that at the end of this period he had surrendered the lease to the landlord and the landlord had accepted the surrender. Subsequently, the landlord filed proof of claim for the rent of the entire term, which, under the terms of the lease, became due on the date of the filing of the petition in bankruptcy, amounting to $7,306.25. The claim was divided into two parts; the first was for the full amount of one year's rent, claimed as a priority by virtue of his lien as landlord; the second was for rent for the balance of the term, and was made by the landlord as general creditor.

Of the total amount of the proof of claim, the landlord claimed priority for $3,075.00, under the law of Pennsylvania giving a landlord priority for one year's rent, less the following deductions: $150.00 paid him by the Trustee on account of rent for the months of November and December, 1916; $768.75 paid him by the Trustee for his use and occupation of the premises for the months of January, February, and March, 1917; $525.00 collected by the landlord from the Star Clothing Company within the year as rent under a lease which he subsequently made; leaving $1,781.25 as the balance of one year's rent, for which the landlord claimed priority. There is manifest inaccuracy in this calculation due perhaps to the payment to the landlord of $150.00 after the filing of the claim. Subject to correction by the Referee, we make the balance of rent due for one year by priority to be $1,631.25.

The determination of the landlord's priority for rent covering one year (whether for the admitted balance of $387.50 for rent in arrear prior to bankruptcy, or for the claimed net balance of $1,781.25—or $1,631.25—for a full year) depends, as we have said, upon a determination of the second question involved, which is: Whether the transaction on which the Trustee relies as a surrender of the lease was in fact a surrender. This must first be disposed of.

On the question of surrender of the lease, there is no testimony. It was decided upon a stipulation which both parties agreed contained all the facts. This stipulation is as follows:

"5. On March 16, 1917, the Trustee filed a petition setting forth the fact * * * that the landlord had demanded of the Trustee the rent for the months of January, February, and March, requesting that the question as to whether the Trustee should continue to hold the possession of the building, during the term of the lease, be submitted to the creditors.

"5 (a). On the same day a like petition was filed by the Trustee, stating that under the facts therein stated, the Trustee was unable to determine whether the estate was liable for the rent and prayed for a rule on the landlord to show cause why the claim should be paid by the Trustee.

"5 (b). On the first petition, a meeting of the creditors was called and the question of the surrender of the lease was submitted to them. At the said meeting the landlord and his attorney were present in person and after a lengthy discussion the Trustee was directed by the creditors to surrender the lease and turn over the building to the landlord and an order was made and filed by the Referee to this effect. The Trustee thereupon, and at the said meeting, handed the key to the attorney for the landlord and stated that he thereupon surrendered the lease. The landlord, by his attorney, received the key, but stated that he accepted same upon the express conditions that he

would care for the building and rent it if possible for the benefit of the estate.

"5 (c). As appears by the subsequent proceedings, the landlord immediately took possession of the building, and shortly thereafter rented the first floor to the Star Clothing Company, at a rent of $150.00 per month."

In this situation the Trustee filed exceptions to the landlord's proof of claim for rent on the ground that he had surrendered the lease to the landlord in March, 1917, and that, in consequence, no rent should be allowed him after that date, and, further, that the landlord had no priority for rent either for the months preceding or the months succeeding that date.

In an elaborate opinion, showing a very careful study of the case, the Referee found that the Trustee had a right to surrender the lease and that he did surrender it; that the landlord had no power to decline to accept the surrender and that he could not validly make a conditional acceptance of surrender; that the landlord's attempted conditional acceptance was in fact a complete acceptance; and that, in consequence, he is estopped from claiming rent for the remainder of the term; and, finally, that a landlord is not entitled under the law of Pennsylvania to priority in the payment of rent from proceeds of the sale of property on demised premises where the same is in custodia legis (i. e. in bankruptcy), except in the two instances specifically provided by the Pennsylvania statute with reference to executions and assignments for the benefit of creditors; and that, as under the Bankruptcy Act a landlord is only entitled to such priority for rent as is given by the state law, the landlord here is not entitled to priority in his claim for rent in bankruptcy. On exceptions to the District Court, the findings of the Referee, both of fact and of law, were sustained on the Referee's opinion.

We find a full and careful statement of this case necessary to a consideration of the questions involved, because the decision of the Referee, affirmed by the District Court of the United States for the Western District of Pennsylvania, not only overturns a practice long established in all the districts of Pennsylvania, and in the District of Delaware, but is diametrically opposed to a decision involving one of the same questions, early made by the District Court of the United States for the District of Delaware and to a decision recently made by the District Court of the United States for the Eastern District of Pennsylvania. Therefore, we are anxious that there shall be no doubt as to the facts on which we are to render a decision, which will affect very directly the future practice in all Federal districts in the State of Pennsylvania, and, we apprehend, in the District of Delaware also.

It may not be amiss to allude on the threshold of this discussion to certain principles of law which have been so well settled that they are no longer open to dispute. One relates to the duty of a trustee with reference to a bankrupt's lease, and another pertains to the power of the lessee (and to the corresponding power of his Trustee in bankruptcy) to dispose of his obligations under the lease.

[3] It is clearly settled that a trustee may, at his option, assume a lease of the bankrupt or decline to assume it as an asset of a bankrupt estate; and he has a reasonable time within which to exercise

this option. If he considers the lease of value to the estate and assumes it, bankruptcy operates like any other assignment and the bankrupt is released from all liability for rent thereafter. But if he deems the lease of no value to the estate and refuses it, this does not avoid the lease but leaves the bankrupt lessee liable as before. In re Scruggs (D. C.) 31 Am. Bankr. Rep. 94, 205 Fed. 673.

[4] The trustee may, however, do more than this. He may, if the landlord consents, surrender the lease; whereupon the landlord regains possession of the premises, and all unmatured obligations between the parties depending upon the continuance of the leasehold estate are terminated. But in surrendering the lease, the Trustee has no greater right than the tenant, had he attempted to make a surrender before bankruptcy. To be a valid surrender in either case there must be, not only an offer by the lessee (or the trustee) to yield up the leasehold, but an acceptance of that offer by the lessor, for nothing is better settled in Pennsylvania than that—

"A tenant for years cannot relieve himself from his liability under his covenant to pay rent by vacating the demised premises during the term, and sending the key to his landlord. The reason for it is that in the absence of fraud, one party to a contract cannot rescind it at pleasure. And the landlord may accept the keys, take possession, put a bill on the house for rent, and at the same time apprise his tenant that he still holds him liable for the rent. All this, as was said by Mr. Justice Rogers in Marseilles v. Kerr, 6 Wharton, 500, is for the benefit of the tenant, and is not intended, nor can it have the effect, to put an end to the contract and discharge him from rent. * * * There was neither a release nor an eviction here, but the surety claimed to be discharged because after the tenant, who was his principal, sent the keys to the landlord, the latter leased the property to another tenant. Yet there is no pretence that the landlord accepted a surrender; on the contrary the proof is clear that he declined to do so, and notified the defendant below that he would hold him for the rent. * * * Yet it was urged by the defendant below that such subsequent leasing by the landlord, and the acceptance of rent from the tenant, raised a presumption of a surrender. A surrender of demised premises by the tenant during the term, to be effectual, must be accepted by the lessor. The burden of proof is upon the tenant to show such acceptance. * * * When, therefore, the lessor retains the keys, and at the same time notifies the lessee that he will hold him for the rent, there is no room for the presumption of a surrender. Nor does the renting of the premises to another tenant under such circumstances raise such presumption, for the reason that it is manifestly to the lessee's interest that they should be occupied. The landlord may allow the property to stand idle, and hold the tenant for the entire rent; or he may lease it and hold him for the difference, if any." Auer v. Penn, 99 Pa. 370, 44 Am. Rep. 114; In re Keith-Gara Co. (D. C.) 203 Fed. 585; Id., 213 Fed. 450, 130 C. C. A. 96.

[5, 6] Applying these principles to the facts stipulated, it appears that the Trustee tried to do one thing and succeeded in doing another. First, acting on the instruction of the creditors, he offered to surrender the demised premises to the landlord and symbolized his offer by the delivery of the key to the landlord's attorney. But we find nothing in the stipulated record which shows or even suggests that the landlord or his attorney accepted the tender as made; but on the contrary the record shows that the attorney speaking for the landlord on accepting the key, specifically stated:

"That he accepted same upon the express conditions that he would care for the building and rent it if possible, *for the benefit of the estate.*"

Instead of being an acceptance of surrender, the act of the landlord was, in fact, a rejection of surrender, and left the lease where it was before the attempt to surrender was made. The Trustee, by delivering the key and abandoning the property, exercised his option to refuse to accept and administer the lease as an asset of the estate, as he had a right to do, but in doing this, he left the obligation of the bankrupt tenant under the lease just where it was before bankruptcy intervened.

The Trustee's failure successfully to surrender the lease and his refusal to treat the lease as an asset of the estate did not annul the lease, nor did it relieve the tenant from his obligation to pay rent, but left the tenant (and in consequence, the bankrupt estate), liable for rent on a continuing lease for the balance of the term, on proof of claim being seasonably filed. Auer v. Penn., 99 Pa. 370, 44 Am. Rep. 114; In re Keith-Gara Co. (D. C.) 203 Fed. 585; Id., 213 Fed. 450, 130 C. C. A. 96. Such proof of claim has been filed, and raises the two questions we have already stated, the first of which concerns payment of rent to the landlord by priority out of proceeds of the sale of goods on the demised premises liable to distress, by reason of the cited provisions of the Pennsylvania statute and Bankruptcy Act.

In considering the provisions of these statutes we should first observe the policy of the law with respect to their subject matter. This subject matter, so far as it is relevant to the issues of this case, is, landlords and tenants, and rents payable to one by the other. The law guards with care the rights of a landlord to his security for rent; and this is for obvious reasons. A landlord's right to rent is given by the instrument of demise; his remedy for the enforcement of that right is ordinarily conferred by law. Before bankruptcy, certain securities for his rent are given him, among these are the goods and chattels of the tenant on the demised premises, and various remedies are afforded him to reach these securities for the payment of his rent. But when bankruptcy intervenes, the whole situation is changed. Bankruptcy takes from the landlord his securities and gives them to the trustee, and deprives the landlord of the legal remedies which but for bankruptcy he might pursue in obtaining his rents and gives him in lieu thereof only such remedies as may be found in a court of bankruptcy in the equitable administration of the bankrupt tenant's assets. When, because of bankruptcy, goods and chattels on demised premises cease to be security for the landlord's rent and become bankrupt assets and are no longer within the reach of legal process, what constitutes the equitable administration of a law which withdraws such security and takes away such process? When bankruptcy appropriates the landlord's security and cuts off his legal remedies under the exigencies of the debtor's insolvency, it would be most inequitable, speaking generally, to deprive a security holder of his security and hand it over to general creditors. Recognizing this inequity, the Bankruptcy Act, under its general scheme, endeavors not to destroy legal rights either in a debt or in its security, but endeavors rather to preserve them, though it enforces them in a new way made necessary by the bankrupt's financial collapse. In enforcing a landlord's rights in an equitable way, the Bankruptcy Act endeavors to protect them in the same

measure and preserve to them the same advantages so far as practicable that the law gave them before bankruptcy stepped in and interfered with their operation, having regard to their nature, their superiority, their priority. Bindseil v. Liberty Trust Co., 248 Fed. 112; Id., 160 C. C. A. 252. To this end the Bankruptcy Act (section 64b, cl. 5 [Comp. St. § 9648]) provides, that the debts which have priority and to be paid in full are:

"(5) Debts owing to any person who by the laws of the States or the United States is entitled to priority."

The law of the state, which the Bankruptcy Act seeks to recognize and under which the landlord in this case claims priority in the payment in full of a part of his debts, is a statute of Pennsylvania, Act of June 16, 1836 (P. L. 777), § 83. This statute provides, that:

"The goods and chattels being in or upon any messuage, lands or tenements which are or shall be demised for life or years, or otherwise, *taken by virtue of an execution*, and liable to the distress of the landlord, shall be liable for the payment of any sums of money due for rent at the time of taking such goods in execution: Provided, that such rent shall not exceed one year's rent."

It is conceded in this case, that at the time the tenant's goods and chattels on the demised premises came into the possession of his Trustee under operation of the Bankruptcy Act, they were "liable to distress of the landlord," and that, had they been taken in execution before levy of a distress, the proceeds of the execution sale would have been "liable for the payment of (the landlord's) rent" for one year in priority to the payment of the claim of the execution creditor. It is also conceded that by the construction which the courts of Pennsylvania have given this statute, the landlord's priority is not confined to the last year's rent, but extends to one whole year's rent (Weltner's Appeal, 63 Pa. 302), and that a covenant for rent payable in advance, or a stipulation in a lease that on breach of a covenant the whole rent for the balance of the term shall at once become due, is, within the terms of the Pennsylvania statute, *"money due for rent at the time of taking such goods,"* and also is within the class of *"debts owing to any person,"* to which, under section 64b, cl. 5, of the Bankruptcy Act, priority is enforced when awarded by state law. In re Keith-Gara Co. (D. C.) 203 Fed. 585. Such covenants, not being against public policy, will be sustained to the extent of giving the landlord priority for one year's rent. Collin's Appeal, 35 Pa. 83; Platt Barber Co. v. Johnston, 168 Pa. 47, 31 Atl. 935, 47 Am. St. Rep. 877. Thus, the facts of this case bring the landlord within the terms of the Pennsylvania statute so far as they have been interpreted by Pennsylvania courts, and raise squarely the question, whether the landlord is entitled to priority for rent in a distribution in bankruptcy by force of a state statute which gives priority to the landlord only in instances of goods on the demised premises liable to distress, which have been seized and sold in execution or on assignment for the benefit of creditors.

This question was raised many years ago and was answered by the Supreme Court of the United States in Longstreth v. Pennock, 87 U. S. (20 Wall.) 575, 22 L. Ed. 451. In that case the Supreme Court, in-

terpreting the same Pennsylvania statute, held, that, the statute, in giving a landlord's claim for rent priority in the distribution of the proceeds of an execution sale of goods on the demised premises liable to distress, extends that priority by equitable intendment to the proceeds of goods similarly situated when seized and sold by an assignee in bankruptcy. This construction by the Supreme Court of the United States of the Pennsylvania Act of 1836, when invoked in proceedings in bankruptcy, has been followed both under the old bankruptcy act and under the present act without question in all Federal districts of the State of Pennsylvania and in the District of Delaware from the date of its announcement until the institution of the proceedings in this case. The law of Longstreth v. Pennock is now questioned, because of a recent decision by the Supreme Court of Pennsylvania again bringing under review the Statute of 1836 (and the like Act of March 21, 1772, 1 Smith's Laws, p. 370), and also the Act of May 26, 1891 (P. L. 122), which enlarged the Act of 1836 and extended to the landlord relief in all cases where a tenant makes an assignment for the benefit of creditors of goods and chattels upon demised premises liable to distress. This decision was made in Grayson v. Aiman, Inc., 252 Pa. 461, 97 Atl. 695 (1916), and concerned the Pennsylvania statute, not with reference to its enforcement in bankruptcy, but with reference to its operation in sales by receivers appointed on a bill in equity. In that case, goods on demised premises liable to distress for rent had passed into the hands of a receiver for a tenant, and were sold. The landlord claimed priority in the distribution of the proceeds and asked the court to so construe the statute as to give the landlord priority to the same effect as though goods similarly situated had been levied on and sold under execution process. The Supreme Court of Pennsylvania gave the statute a literal construction and declined to extend its provisions to seizures and sales by receivers. The Trustee in the case at bar took the position, that when the Supreme Court of Pennsylvania held that the landlord's priority in proceeds of sales under execution, specifically conferred by the Pennsylvania statute, did not extend to proceeds of sales by receivers, the statute, pari ratione, withheld priority from a landlord in the proceeds of sales in bankruptcy proceedings; and that, as the decision in Grayson v. Aiman, Inc., was a construction of a state statute by the court of last resort of the state that had enacted it, the decision over-ruled Longstreth v. Pennock and reversed the practice based thereon and followed in the districts of Pennsylvania. The Referee approved this contention and the District Court sustained his finding.

Whether this decision of the District Court is right depends upon the character of a bankruptcy proceeding in so far as it concerns the seizure and sale of goods liable to distress found on the premises of a bankrupt tenant. If the proceeding is one of execution, then it falls within the terms of the Pennsylvania Act, and the priority of that statute is drawn to the proceeding by force of section 64b, cl. 5, of the Bankruptcy Act. If it is not in its nature an execution, then the priority afforded by the Pennsylvania Act does not reach a proceeding in bankruptcy and cannot be extended to a landlord in the distribution of proceeds of bankruptcy sales.

By early decisions under the old bankruptcy act, bankruptcy proceedings were regarded to "have the effect of a statutory execution so that the case of the bankrupt's landlord may be within the equity of any laws of the respective states which entitle a landlord to payment out of the proceeds of goods taken in execution." In re Appold, Fed. Cas. No. 499; In re Wynne, Fed. Cas. No. 18,117; In re Trim, Fed. Cas. No. 14,174; In re McConnell, Fed. Cas. No. 8,712; In re Bowne, Fed. Cas. No. 1,741; Austin v. O'Reilly, Fed. Cas. No. 665; In re Dunham, Fed. Cas. No. 4,145; In re Hoagland, Fed. Cas. No. 6,545.

In decisions under the present bankruptcy act, and particularly in decisions by District Courts in this circuit, proceedings in bankruptcy have been similarly regarded. The District Court of the United States for the Western District of Pennsylvania, In re Hoover (D. C.) 113 Fed. 136, followed Longstreth v. Pennock and construed the application of section 64b, cl. 5, of the Bankruptcy Act of 1898 to the Pennsylvania Act of June 16, 1836, now under discussion, by aptly saying:

"The Bankrupt Court having taken possession of this property, thus liable for the rent, its process whereby the same was sold must, for the purposes of this statute, be regarded as an equitable execution. The case is within the equity of the statute. Longstreth v. Pennock, 87 U. S. [20 Wall.] 575, 22 L. Ed. 451."

The District Court of the United States for the Eastern District of Pennsylvania (In re Delaney, 251 Fed. 425) as recently as 1918, following In re Hoover, and relying on Longstreth v. Pennock, declared that "bankruptcy of the tenant operates as an equitable execution," under which the landlord is entitled to priority in the proceeds of sale of goods and chattels liable to distress on the demised premises, by force of the Pennsylvania Act, and in reaching this conclusion, regarded the decision in Grayson v. Aiman, Inc., as not bearing on the question.

The District Court of the United States for the District of Delaware, In re Mitchell, 116 Fed. 87, following Longstreth v. Pennock and In re Hoover, construed the Delaware statute—which in substance is identical and in language is similar to that of the statute of Pennsylvania—as extending the priority which it gave the landlord in the distribution of the proceeds of execution sales to proceedings in bankruptcy, and held that the state statute is such as the courts of the United States would and should recognize under section 64b, cl. 5, of the Bankruptcy Act. In reaching this conclusion, the District Court for the District of Delaware refused to distinguish this case (as later did the District Court for the Eastern District of Pennsylvania, In re Delaney), in which goods seized in bankruptcy were liable to distress but against which no distress had been levied when bankruptcy began, from the case of In re Hoover, in which goods so liable to distress had actually been distrained but execution of the distress warrant had been interrupted by bankruptcy proceedings, holding that the landlord's lien, as it is commonly called, or the landlord's security, as it is sometimes called, is established by law, not by force either of distress actually levied in one case or the issuance of an execution in another.

256 F.—38

It thus appears throughout the judicial history of bankruptcy statutes, that a bankruptcy proceeding has been variously termed "a statutory execution," "an equitable execution," "the equivalent of an execution," "in effect an attachment and injunction," and has been uniformly regarded, in essence, though not in form, an execution which draws to itself for enforcement, by reason of section 64b, cl. 5, of the Bankruptcy Act, such priorities as are accorded landlords in the distribution of proceeds of execution sales by the law of the state in which the bankruptcy proceeding is being carried on. Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405.

We are therefore of opinion that the decision of the Supreme Court of Pennsylvania in Grayson v. Aiman, Inc., 252 Pa. 461, 97 Atl. 695, is not in conflict with the decision of the Supreme Court of the United States in Longstreth v. Pennock.

[7] The decision of the Referee, sustained by the District Court, with reference to the landlord's claim of priority for the balance of rent for one year is reversed with instructions to make a new order with respect thereto conformably with this opinion.

[8] The second part of the landlord's proof of claim is for rent due for the balance of the term, that is, for rent for the term following the year for which rent has been allowed by priority. This rent amounts to $4,231.25, less $2,475.00, rent which the landlord had collected from the Star Clothing Company, sub-tenant, during that period, leaving a balance of $1,752.25 (or, as we make it, $1,756.25). The landlord arrived at this sum by deducting from the total rents due, rents received by him from the sub-tenant, and by setting off the latter against the former. On exceptions by the Trustee, the Referee disallowed the whole of the claim for rent after December 31, 1916, on the theory that rent had been paid for January, February, and March, 1917, and that the lease having then been surrendered, no rent was due thereafter, either by priority or otherwise, but allowed a portion of the claim for the balance of rent confessedly due for the months of November and December, 1916, amounting to $387.50.

As we have held that there was no surrender of the lease, and that the landlord is entitled to one year's rent by priority, manifestly he is entitled also to prove his claim of rent due for the balance of the term and to receive in payment thereof the same dividends as other general creditors receive. The landlord, however, claims more than this. He maintained the lease in force by refusing to accept its surrender, and, according to his own stipulation, accepted possession of the property "upon the express conditions that he would care for the building and rent it if possible *for the benefit of the estate.*" He succeeded in renting the building, but instead of collecting the rents and handing them to the Trustee for the "benefit of the estate," he kept them and appropriated them to his own benefit by way of set-off against his claim for rent.

As the landlord is entitled to rent for the balance of the term, not by preference or by priority under any statute, but only by reason of his position of general creditor, he must look for payment to the gen-

eral assets of the estate. These belong to and must first come into the hands of the Trustee. They are made up as well of rents collected from the demised premises under a subletting for the benefit of the estate as of other assets of the bankrupt. The mere accident that in this instance these rent credits were collected by the landlord gives him no right to withhold them from the Trustee and no right to retain them and use them as a set-off against his general claim for rent due him from the estate. In Singerly v. Fox, 75 Pa. 112, where a landlord set off his debt to a receiver for goods purchased against a debt due by the receiver to the landlord for rent, the Supreme Court, on disallowing the set-off, said:

"We can readily see how, at least this part of the proceedings of a court of equity might degenerate from a regular and orderly process to a mere scramble for the debtor's goods. We can further see, that if the partnership [in this case the bankrupt estate] prove insolvent, one creditor might get his whole claim, and another nothing."

As the landlord held the bankrupt tenant (and therefore his Trustee) for rent for the balance of the term, the Trustee is entitled to whatever the demised property produced during that period, before meeting obligations of the estate to the landlord.

If, in the final outcome, this is a hardship to the landlord, it is one which he imposed upon himself by electing to hold the tenant on the lease rather than to accept the surrender of the lease. The landlord was confronted with a practical problem. Had the assets of the bankrupt estate been considerable and the prospect of renting the premises slight, the landlord would have profited by refusing the surrender; had the assets on the other hand been inconsiderable and the prospect of renting the premises good, he would have profited by accepting the surrender. The thing the landlord did was to decline the surrender of the lease. Having elected to accept one situation, he cannot now have the profits arising from both situations.

The findings by the Referee on the landlord's proof of general claim for rent for the balance of the term, as sustained by the District Court, are reversed, and the District Court is instructed to enter another order, directing the landlord to pay the Trustee $2,475.00—the rents received by the landlord for the balance of the term following the year for which rent has been allowed him by priority—and when so paid, allowing the landlord such dividends in discharge of his general claim as are declared to general creditors.

As the two claims for rent—one by priority and the other as a general claim— arise out of the same lease, are affected by the same transactions, and are, in consequence, inseparably connected, the District Court is further instructed to embody in its revised order a disallowance of both claims filed by the landlord in his one proof of claim, unless he pays to the Trustee within a reasonable time all moneys he has collected in renting the property for the benefit of the estate, except the sum of $525.00, which is the sum he received from the subtenant during the year in which he has been awarded rent by priority, and which he has deducted from the amount of rent so claimed.