## Sargent et al. v. Auditors of Munster Township

*C. Randolph Myers*, for appellants; *P. J. Little*, for appellees.

McKENRICK, J., January 30, 1935.—On February 3, 1933, this court filed its opinion disposing of certain matters raised by appeal from the auditors' settlement. Among other specifications involved in the appeal was one relating to the right of the supervisors of Munster Township to receive payment for attending meetings. It was admitted that the supervisors of Munster Township, which is a township of the second class, acted as roadmasters.

In our opinion, we sustained the specifications filed by appellants and held that ch. VI, art. III, sec. 235, of the Act of July 14, 1917, P. L. 840, as amended, did not authorize supervisors who acted as roadmasters to receive compensation for attending meetings. We said in the opinion referred to: "As we understand the act, there is no provision in it to cover compensation for attending meetings where, as in this case, the supervisors act as roadmasters."

Counsel for the supervisors petitioned for a rehearing and for permission to take additional testimony. The said petition averred that "the matter in question is of great importance to the supervisors of second class townships throughout the Commonwealth of Pennsylvania, for the reason that it has been customary in many of the townships throughout the State for supervisors who do act as roadmasters also to be compensated for meetings they attend as members of the board of supervisors in their respective townships."

Upon taking additional testimony, it appeared that the supervisors did not receive compensation for work as roadmasters on the same days that they were

paid for attending meetings, and there was no duplication of compensation during the period covered by the exceptions. One of the supervisors testified on cross-examination that on two or three occasions he worked until noon as roadmaster and attended meetings in the afternoons charging $3 for attending each meeting but nothing for his work as roadmaster during those days.

The Act of 1917, sec. 235, as amended by the Act of March 7, 1929, P. L. 13, which is the act under discussion and the act upon which the claim for compensation is based, provides: "Supervisors who do not act as superintendents or roadmasters shall receive from the township road funds, as compensation, not less than two dollars and fifty cents nor more than four dollars for each semimonthly meeting which they attend. The amount of the compensation shall be determined by the township auditors. The township auditors shall also allow to the supervisors compensation for making a semi-annual inspection of the roads and bridges. The compensation of supervisors, when overseeing or working on roads, shall be fixed by the township auditors, and shall be not less than three nor more than six dollars per day."

The first act of assembly creating a board of township supervisors in townships of the second class, and creating the office of roadmasters, was the Act of April 12, 1905, P. L. 142. That act did not provide any compensation for the supervisors: Second-Class Township Roads, 32 Pa. C. C. 1. Section 3 of the Act of June 14, 1911, P. L. 942, gave the supervisors the right to work on the roads instead of employing a superintendent or roadmaster. The compensation of the supervisors was to be fixed by the township auditors. That act continued in force until the Act of 1917, sec. 235.

Under the Act of 1905, the supervisors could not receive any compensation and were compelled to appoint roadmasters. They were first permitted to act as roadmasters under the Act of 1911, and could receive compensation only as roadmasters. Next came the Act of 1917, which provides that if the supervisors do not act as superintendents or roadmasters they shall receive not less than $2.50 nor more than $4, as the auditors may determine, for each monthly meeting which they attend.

The words are plain. The legislature expressed its intention in certain language—that the supervisors may receive compensation either by attending monthly meetings or by acting as roadmasters, but they cannot receive compensation for both. There is no inherent right in a public officer to receive pay for his services. Members of the council in boroughs receive no pay; members of school boards in boroughs and townships receive no pay. It is a common principle of law that an officer can receive no compensation unless he can point to some statute authorizing it: Fry v. Berks County, 38 Pa. Superior Ct. 449.

Words in common use are to be given their natural, plain, ordinary, and commonly understood meaning, in the absence of any statutory or well-established technical meaning, unless it is plain from the statute that a different meaning was intended, or unless such construction would defeat the meaning of the legislature: Commonwealth v. Wark Co., 301 Pa. 150; West v. Lysle et al., 302 Pa. 147.

It is the legislative intent that governs in the construction of a statute, but the legislative intent must be found in the statute itself. Unless good ground may be found in the statute for enlarging or restricting the meaning of the words, the court cannot add thereto or subtract therefrom. Where the words are plain and clearly define its limit, construction cannot extend the terms of the statute: Grayson v. Aiman, Inc., 252 Pa. 461.

What do the words mean, taken in their natural, plain, ordinary, and com-

monly understood meaning—and it must be admitted that none of the words used has a statutory or well-established technical meaning? Simply this: That a supervisor who does not act as roadmaster shall receive pay for attending a meeting. And the converse of this proposition is that a supervisor who does act as roadmaster shall not receive pay for attending a meeting.

It has been urged upon us that the State Highway Department and the supervisors in other districts have interpreted this act to mean that supervisors could not receive pay for working as roadmasters and attending meetings as supervisors on the same day. We can find nothing in the language of the act under discussion which justifies this interpretation. It will be noted that the supervisors are to be paid for making a semi-annual inspection of roads and bridges, and that they shall also be paid when overseeing or working on the roads. There is not a word in the statute that says supervisors shall be paid for attending meetings unless they are supervisors who do not act as roadmasters. The Supervisors of Munster Township admittedly act as roadmasters, overseeing and working on the roads themselves. For these services they receive pay. They are not of that class of supervisors "who do not act as . . . roadmasters", thereby becoming entitled to receive compensation for attending meetings, but are in fact supervisors who do act as roadmasters, and for their attendance at meetings the legislature has provided no compensation.

It is not the function of the court to legislate. We cannot say to ourselves: These supervisors have rendered a service to the township, they have taken their time from their private pursuits and have given it to the public, therefore they should be paid for the time spent attending meetings. These reasons could be urged before the legislature, and subsequent events have revealed that the legislature has responded.

By the Act of May 1, 1933, P. L. 103, known as the Second Class Township Law, ch. VI, art. III, sec. 235, of the Act of July 14, 1917, P. L. 840, and the amendments thereto, are specifically repealed, and, in section 515, we find the following: "Compensation of Supervisors.—Supervisors shall receive from the township road funds, as compensation, not less than two dollars and fifty cents nor more than four dollars for each meeting which they attend. The amount of the compensation for attending meetings shall be determined by the township auditors. The township auditors shall also allow to the supervisors reasonable compensation for making a semi-annual inspection of the roads and bridges. The compensation of supervisors, when overseeing or working on roads, shall be fixed by the township auditors, and shall be not less than three nor more than six dollars per day; but no supervisor shall receive compensation as a superintendent or roadmaster for any day he receives compensation for attending a meeting of supervisors, unless such meeting is held during the nighttime."

Thus the legislature has written into the statute law what counsel for the appellees desire us to do by judicial construction. We understand that our original construction of the Act of 1917, as amended, resulted in bringing before the legislature the injustice which supervisors had to endure under the law which was in effect and therefore binding upon the present parties.

As a matter of simple justice, the arduous duties of a township supervisor should be compensated. By the terms of the statute a supervisor who took upon himself the duties of roadmaster and worked but one day as such, deprived himself of compensation for attending monthly meetings throughout the year, regardless of the miles to be traveled or the hours spent in attending to the township business. On the other hand, a supervisor who refused to act as road-

master became entitled to be paid for attending meetings. This inequality worked a hardship on the supervisors and certainly was not conducive to the best interests of the taxpayers of the township.

We believe that the Supervisors of Munster Township acted in good faith, and knowing them personally we can say that not one of them would knowingly demand or accept one cent to which he was not legally entitled. We know that supervisors generally throughout the Commonwealth were led to believe that roadmasters could receive pay for attending meetings. However, when the court is required to construe the law applicable to stated facts, its duty is plain. Sympathy, desire to please, and policy have no place in a judicial proceeding; neither have we the right to bridge over or supply defective legislation. The legislature may have reasons satisfactory to it to enact a law; whether the same reasons which impelled the legislature to enact the law would justify a still broader provision is not the subject of judicial inquiry. We must take the law as we find it, and it would be a dangerous usurpation of legislative power if the courts set out to complete the work where the legislature left off. To read into the act which governs this case the construction for which appellees contend would do violence to the plain meaning of the language which the legislature used, and would make the court a superlegislative body instead of a judicial body.

Happily, the legislature in 1933 corrected the defects in the prior legislation and clarified what other legislatures may have intended but failed to express.

For the reasons herein stated, we must adhere to our former ruling and sustain the surcharge made.      From Henry W. Storey, Jr., Johnstown, Pa.