## EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. STINNETT.

(Circuit Court of Appeals, Sixth Circuit. June 9, 1926.)

No. 4443.

1. Evidence ⬉383(4)—Coroner's certificate of death not made by statute prima facie evidence as to matter of opinion stated therein (Carroll's Ky. St. §§ 2062a8, 2062a21).

Carroll's Ky. St. §§ 2062a, 2062a21, providing that the record of a coroner's certificate of death shall be prima facie evidence in all courts "of the facts therein stated," do not make prima facie evidence a statement in such a certificate that death was due to suicide, of which he is required by the statute to state only his opinion as to the probability.

2. Trial ⬉62(2)—Evidence held admissible as rebuttal of evidence showing possible reason for suicide of insured in action on life policy.

Where defendant in an action on a life policy, in which the defense was suicide, had introduced evidence of a large indebtedness of de-

ceased, as tending to show a possible reason for the act, letters were admissible on behalf of plaintiff showing that the indebtedness was not due, nor pressing, but that insured was negotiating with a view to its payment in advance of maturity.

**3. Insurance ⊜=646(7), 668(12).**

In action on life policy, burden is on defendant to establish defense of suicide, and court should not direct verdict for defendant on that issue, unless facts and circumstances proved are such as to permit of no other reasonable inference.

**4. Insurance ⊜=668(12).**

Evidence *held* not to establish defense of suicide, as matter of law, in action on life policy.

In Error to the District Court of the United States for the Western District of Kentucky; Charles I. Dawson, Judge.

Action at law by Sophia Bell Stinnett against the Equitable Life Assurance Society of the United States. Judgment for plaintiff, and defendant brings error. Affirmed.

Action was brought by Sophia Bell Stinnett, as administratrix of the estate of William A. Stinnett, upon a life insurance policy in the sum of $25,000 on the life of William A. Stinnett, issued March 4, 1922, by the Equitable Life Assurance Society of the United States. This policy contained the following provision: "Self-destruction, sane or insane, within one year from the date of issue thereof, is a risk not assumed by the society under this policy. In such an event the society's liability shall be limited to an amount equal to the premium actually paid." On October 8, 1922, Stinnett's dead body was found in a lake near Earlington, Ky.

On the preceding Friday, Stinnett had ridden with Damron from Madisonville, Ky., where he lived, to Earlington. On the way over he had asked Damron about bathing in the lake near Earlington, and was told he would have to have a bathing suit, which he could get at the St. Bernard Coal Company's store. When they reached Earlington about 9:30 a. m., they separated, with the understanding that they would meet for the return trip in the afternoon of the same day.

Stinnett tried to buy a bathing suit at the coal company's store and was told by a clerk that they had none in stock, but he could find one at the hardware store across the railroad. Shortly thereafter Stinnett was seen walking near the city limits. Later, and at his request, he rode with a rural mail carrier about three-quarters of a mile beyond Earlington. He told the mail carrier he was going to the lake for a bath, and asked if he would need a bathing suit. He requested to be let out at the lake, and asked if there was a bathing manager, and was told that there was not. When the mail carrier last saw him he was walking down a little road leading from the highway to the lake. He was not seen again by any one until the following Sunday morning, when his hat was found on the bank, two or three feet from the water's edge, and his body, fully dressed, was shortly thereafter discovered, standing in about five feet of water, slightly bent, with just the side of his head showing out of the water. One foot was deeply embedded in the mud, and the other slightly in advance.

The Assurance Society, for answer to the plaintiff's petition, averred that Stinnett had committed suicide, within one year from the date of the issue of the policy and that this was not a risk assumed by the society, but, on the contrary, its liability was limited to an amount equal to the premium actually paid, to wit, $446.75, for which amount it offered to confess judgment. The plaintiff, by reply, denied that Stinnett had committed suicide. Upon the issue so joined, the jury returned a verdict for the plaintiff in the sum of $25,000. A motion for a new trial was overruled, and judgment was entered upon the verdict.

Wm. Marshall Bullitt, of Louisville, Ky. (John E. Tarrant, of Louisville, Ky., on the brief), for plaintiff in error.

E. B. Anderson, of Owensboro, Ky., for defendant in error.

Before DENISON, DONAHUE, and KNAPPEN, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). [1] It is insisted on the part of the Assurance Society that the court erred in rejecting a certified copy of the death certificate, filed as required by the law of Kentucky, in the bureau of vital statistics of that state. Section 2062a8 of Carroll's Statutes provides that, where death occurs without a physician in attendance, it shall be the duty of the undertaker to notify the registrar of such death, who shall in turn notify the local health officer and refer the case to him for immediate investigation and certification, prior to issuing a burial permit, and that, if the circumstances of the case render it probable that the death was caused by unnatural or unlawful means, the registrar shall then refer the case to the coroner for his investigation and certification. It is further provided that any coroner, whose duty it is to hold an inquest on the body of any deceased person and make the certificate of death required for

a burial permit, shall state in his certificate the nature of the disease, or the manner of death, and "if from external causes of violence whether (probably) accidental, suicidal or homicidal and in either case furnish such information as may be required by the state registrar to properly classify the death," and section 2062a21 provides that a certified copy of this record shall be prima facie evidence in all courts and places of the facts therein stated.

It appears from the certified copy of the record offered in evidence that the certificate in reference to essential statistical particulars as to sex, color, age, occupation, birthplace of the deceased, and other facts of like character, is signed "Robert Lory, Registrar." Following this is what purports to be a medical certificate of death, wholly blank, except for the words "the cause of death was as follows, suicide, drowning." This is signed by Emmett Watts, coroner. The court excluded from the jury that portion of the certificate reading as follows: "Suicide," which appears immediately before the word "drowning." Counsel for defendant excepted to this ruling, and further stated that, if he could not read the entire certificate, he would not read any part thereof.

It does not appear that the Court of Appeals of Kentucky has construed this statute in reference to the admissibility of such a certificate in an action involving private rights only. That court, however, held in Ætna Life Insurance Co. v. Milward, 118 Ky. 716, 82 S. W. 364, 68 L. R. A. 285, 4 Ann. Cas. 1092, that the verdict of a coroner's jury is not admissible on the issue as to cause of death, in an action on an accident insurance policy. It also held, in Andricus v. Pineville Coal Co., 121 Ky. 724, 90 S. W. 233, that a certified copy of the report of the inspectors of mines might be received in evidence as prima facie proof of the condition of the mine when the inspection was made. The decisions of the courts of other states upon this question are in such direct conflict that they are not helpful.

However, the question whether a certified copy of a record of a death certificate made and filed as directed by the statute is admissible in evidence is not presented by the record in this case. Section 2062a8 authorizes the coroner, whose duty it is to hold an inquest on the body, to make the certificate of death required for a burial permit, but there is nothing in this record indicating that the local registrar referred this case to the coroner, or tending to prove that the coroner held

an inquest or examined any witnesses to ascertain and determine the cause of death. That, however, may not be important. If the coroner had authority to make this certificate, without holding an inquest to determine the cause of death, this certificate was not made in conformity with the statute, which requires him to state the nature of the disease, or the manner of death, and, if from external causes of violence, "whether (probably) accidental, suicidal or homicidal." The cause of death was drowning. That was a fact to be stated in the certificate, but whether the drowning was occasioned by accident, suicide, or homicide was not a fact to which the coroner was authorized to certify unqualifiedly, but on the contrary, only as to the probability.

This provision of subdivision 8, considered in connection with subdivision 21, carefully distinguishes between "cause of death," which is a fact to be certified without any qualifications whatever, and the physician's or coroner's opinion, surmise, or conjecture as to the probability of whether this cause was occasioned by the intentional act of the deceased or by accident or homicide. The statute provides that a certified copy of the record shall be prima facie evidence of the facts therein stated. This language clearly distinguishes between "facts" and "opinion" of the physician or coroner, and this distinction is emphasized by the word "probably," in connection with the violence that caused death. Under this construction the word "suicide" would be equally excluded from prima facie effect to be given the certificate as to facts therein stated even though the word "probably" is not used in connection with the word "suicide." If it were conceded that a certified copy of a record made in conformity with the Kentucky statute might be received as primia facie proof that the deceased "probably" committed suicide, there is a substantial difference between prima facie evidence of probability and prima facie evidence of an ultimate fact. In other words, counsel contends that this certificate is prima facie evidence that Stinnett *committed* suicide, while the most that could be claimed for it, if it met the requirements of the statute, would be that Stinnett had *probably* committed suicide.

The defendant also called the coroner as a witness, who testified fully as to all matters and things within his knowledge in reference to the cause of Stinnett's death, upon which he predicated his opinion that the cause of death was occasioned by suicide. It is clear from his testimony that he had no knowledge of any facts in connection with the death of

Stinnett, further than as detailed by all the witnesses present when the body was found. For this reason, even if his certificate had been received as prima facie evidence of suicide, the effect thereof would have been wholly dissipated by his testimony, in which no claim is made that he had professional skill, knowledge, or means of knowledge as to how the external cause of violence resulting in death was inflicted upon the deceased, and his conclusion that it was by suicide was based solely upon his interpretation of the facts not in dispute, and of which the jury was fully informed by the evidence.

[2] It is further claimed that the trial court erred in admitting in evidence the McKenzie letters in reference to the indebtedness of the deceased for a large tract of timber land recently purchased by him in Louisiana. The defendant had introduced evidence tending to prove that Stinnett was largely indebted, and his financial affairs so involved as to indicate a motive for suicide. These letters were properly admitted, as tending to prove that this indebtedness for this timber land was not due and pressing for payment, but, on the contrary, Stinnett was negotiating for the advance payment of this debt, if the creditors were willing to allow a satisfactory discount. These letters were also competent for the purpose of explaining the statement, made by Stinnett to the local agent of the insurance company, that he was expecting to negotiate a loan of $50,000 and needed the policy as additional protection. Objections are urged, particularly to the admission of the letter of October 3d, received after Stinnett's death. This objection is no doubt based upon the theory that this letter could not possibly have had any effect upon Stinnett's mental attitude at the time of his death, but these letters were not introduced for that purpose. Stinnett knew that this debt was not due, but the letters were competent for the purpose of advising the jury as to the exact condition of Stinnett's financial affairs, and relevant to the issue raised by the defendant in its efforts to show a possible motive for suicide. Even if these letters were not competent, their nature is such that their admission in evidence would not be reversible error. Section 269, Judicial Code (Comp. St. Ann. Supp. 1919, § 1246); Miller v. Continental Shipbuilding Corp. (C. C. A.) 265 F. 158-164.

[3, 4] It is further insisted that the court erred in overruling the defendant's motion for a directed verdict at the close of all the evidence. The burden was upon the defendant to prove by a preponderance of the evidence that Stinnett committed suicide. There is no direct evidence upon this subject, but it is insisted that as a matter of law the facts proven are subject to no inference other than suicide.

There is little or no dispute as to the facts. Stinnett's hat was found on the beach; there were footprints in the bed of the lake, trending in the direction of the place in the lake where his body was found fully dressed, in an erect position, with at least one foot firmly embedded in the mud. Stinnett told two of the witnesses he intended to take a bath in this lake. He knew he could not go into the lake naked, because both of these witnesses informed him he would be required to wear a bathing suit. He made some effort to obtain a bathing suit, but was evidently unsuccessful. Where his body was found the water was about five feet deep, but his foot was so deeply sunken in the mud that only the top of his head "which was a little sideways, could be seen out of the water." His foot was so firmly embedded in the mud that it almost capsized the boat when an effort was made to pull him out, so that, whether or not he intended suicide when he waded into the lake, it was practically impossible for him to extricate himself after his foot had sunken in the mud and brought his head under water. It is said, however, that the water was probably higher on Friday than on Sunday morning. That may be true, and yet not high enough to cover his head, if he had not sunk in the mud.

Stinnett was evidently a man of large affairs. He was considerably in debt, but was also the owner of a large amount of valuable property, so that his estate, after paying his debts, amounted to substantially $150,000. The evidence offered by the defendant wholly fails to show that Stinnett was in financial distress at the time of his death, or that his mental condition was other than normal. On the contrary, the evidence would indicate that Stinnett's domestic life and financial affairs were such as to increase rather than diminish his natural desire to live. The law of self-preservation is so universal, and the love of life so implanted in the human heart, that the desire to live persists, even under the most distressing and unfortunate circumstances. For this reason the presumption is against suicide.

The burden was upon the defendant to overcome this presumption, and establish by a preponderance of the evidence that Stinnett intentionally destroyed himself. Where there is no direct evidence of suicide, a court should not direct a verdict, unless the facts and cir-

cumstances proven are such as to permit of no other reasonable inference. In view of the uncontradicted evidence that Stinnett's foot was sunken into the mud so as to bring his head under water, especially at the stage of water on the day he was drowned, and that it was so embedded it was practically impossible for him to extricate himself, the jury might reasonably reach the conclusion that the facts and circumstances proven in this case were as consistent with accidental drowning as with suicide. For this reason the court did not err in overruling the motion for a directed verdict, nor did it err in its charge to the jury on this phase of the case.

Judgment affirmed.