**KERSHAW et al. v. JENKINS.**

**JENKINS v. KERSHAW et al.**

**Nos. 977, 986.**

Circuit Court of Appeals, Tenth Circuit.

June 18, 1934.

Chester Stevens, of Independence, Kan., for appellants and cross-appellees.

Walter L. McVey, of Independence, Kan. (W. N. Banks and O. L. O'Brien, both of Independence, Kan., on the brief), for appellee and cross-appellant.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

H. S. Jenkins instituted this equitable action against the receiver of the Commercial National Bank and the Security National Bank, both of Independence, Kan., to establish a preference claim of $10,000, with interest, against the assets of the Commercial National Bank.

Jenkins, a furniture dealer residing in Independence, did business with the Commercial National Bank. He had carried an account with it for more than twenty-five years prior to the transaction involved here. During part of December, 1929, throughout January and most of February, 1930, his daily balances on deposit exceeded $13,000. On the 28th day of February he discussed with Guernsey, president of the bank, the matter of making an investment in bonds of some kind. After some discussion he finally decided to buy Liberty bonds and have them registered. In response to an inquiry whether the bank had such bonds available, Guernsey said, "We have lots of them. How many do you want?" Without inquiry concerning the price, and without specifying the issue or denomination desired, Jenkins agreed to make a purchase in the sum of $10,000 and thereupon drew a check on his account for that amount. It was payable to the order of the bank. He delivered it to Guernsey and received in exchange a receipt as follows:

"Received of H. S. Jenkins Ten Thousand ($10,000.00) Dollars in United States Government Liberty bonds for safekeeping and subject to his order at any time.
"Commercial National Bank,
"By George T. Guernsey,
"President."

Having no safety deposit box, Jenkins expressed a desire to leave the bonds with the bank for safe-keeping. He was assured that they would be registered. The check was charged to his account. The bank drew and retained in its possession a cashier's check payable to its own order for the amount; a copy of the receipt being attached to it. The bank closed about two weeks thereafter, and its assets were placed in the hands of a receiver. No bonds were segregated or set apart, and the only reference to the transaction in the records of the bank was the cashier's check with the attached copy of the receipt. At the time the bank closed, it had cash on hand in excess of $50,000, sight exchange in the sum of $690,000, and Liberty bonds amounting to $143,000 of which $100,000 were known to be pledged. The record fails to show whether the others were pledged or free. The entire assets of the failed bank were purchased by the Security National Bank on August 30, 1930.

A preference claim was presented to the receiver and disallowed. This suit followed, plaintiff alleging that the bank had fraudulently misrepresented the fact that it had bonds; that the money was given to the bank for the sole purpose of buying bonds; that the assets were impressed with a trust; and

that the Security National acquired them with knowledge of plaintiff's claim.

The court entered a decree awarding a preference claim of $10,000 with interest from March 16, 1933, the date thereof. Jenkins died three days thereafter, and Helen Jenkins, administratrix, was substituted as party plaintiff. Appellants subsequently perfected this appeal from that part of the decree awarding a preference claim, and appellee took a cross-appeal from that part awarding interest, contending that interest should run from the date of the transaction instead of the date of the decree.

■■ One seeking to impress a trust upon the assets of an insolvent national bank in the hands of a receiver must establish a fiduciary relationship between himself and the bank in connection with the transaction giving rise to the claim, and he must trace the trust fund or property in its original or converted form into specific or identifiable property in the possession of the receiver. The trust res may be traced for that purpose by proof clearly showing that the assets of the bank were augmented through the transaction, and, further, that the augmented fund was not depleted intermediate the transaction and insolvency of the bank to a sum less than the amount of the claim. Proof that the augmented fund was not so depleted is required because a trust does not survive depletion and attach itself to subsequent accumulations. The equity of such a claim depends upon the effect the money or property of the cestui que trust had in swelling the assets in the hands of the receiver. If the transaction augmented the assets of the bank, and the fund into which the trust res found its way was not subsequently reduced to a sum less than the amount of the claim, the assets in the hands of the receiver for distribution are increased by that amount, and it does no injury to unsecured creditors to permit reclamation of the trust fund, because the remaining assets for their benefit are the same in amount as though the transaction had not occurred. In other words, if the trust res or its substitute or equivalent is thus traced into the hands of the receiver, profits exist to the creditors resulting from the wrong, and the amount of the advantage is the sum the cestui que trust is entitled to reclaim from the fund for distribution. In such circumstances, reclamation of the trust does the unsecured creditors no inequity. But, if the proof fails to establish these essential elements, full payment of the claim from money in the hands of the receiver for ratable distribution among cred-

itors would be inequitable. So it is not enough merely to show that the trust existed and that the trust fund or property went into the assets of the bank. It must be traced into the possession of the receiver. Blumenfeld v. Union Nat. Bank (C. C. A.) 38 F.(2d) 455; Kershaw v. Kimble (C. C. A.) 65 F.(2d) 553; Mechanics & M. Nat. Bank v. Buchanan (C. C. A.) 12 F.(2d) 891; Fiman v. State of South Dakota (C. C. A.) 29 F.(2d) 776; Cuttell v. Fluent (C. C. A.) 51 F.(2d) 974; Dixon v. Hopkins (C. C. A.) 56 F.(2d) 783; Empire State Surety Co. v. Carroll County (C. C. A.) 194 F. 593.

■■ The facts in this case fall far short of these requirements. No bonds were purchased, and plaintiff in the court below was unable to identify any specific property which had been segregated or set aside. He merely gave his check and trusted the bank to set some bonds apart for him and to have them registered. That was not done. Neither could he identify any particular or segregated fund to which he had title, or upon which he had a lien. The check was charged to his account, but no new money was brought into the bank from an outside source. The transaction was merely one of shifting credits on the books of the bank, and that does not constitute augmentation of assets. Beard v. Independent Dist. (C. C. A.) 88 F. 375; Mark v. Westlin (D. C.) 48 F.(2d) 609; Mechanics & M. Nat. Bank v. Buchanan, supra. The relation of debtor and creditor existed between the parties—unchanged in amount—from inception to conclusion of the transaction. Since there was no augmentation of the bank's assets, it indubitably follows that no increased assets went into the hands of the receiver in consequence of the transaction. The case falls within Blakey v. Brinson, 286 U. S. 254, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288. The facts there were similar to those presented here. There a depositor desired to purchase Liberty bonds in the sum of $4,000. He then had a deposit in an interest-bearing savings account of $1,961.31 with the bank. The officer agreed to obtain the bonds, but stated to the depositor that he must deposit sufficient additional money to increase his deposit to $4,000. Pursuant to that suggestion, the depositor transferred from another bank and deposited $2,100 additional, there by augmenting his account to more than $4,000. On the same day the officer advised him that the bonds had been ordered. A few days afterward the officer said, "I have your bonds," and handed him a charge slip which stated:

650

"This is to advise you that we have this day charged your account as follows:

| | |
|---|---|
| 4,000 Fourth L. L. 4¼% Bonds... | $3,960.00 |
| Acc. Int. ...................... | .60 |
| Commission ................... | 4.00 |
| | $3,964.60" |

Two days later the amount was charged to the depositor's account, and a like sum was credited to the bond account in the bank. The court held that the relationship of debtor and creditor existed from the inception to the conclusion of the transaction; that the mere debiting of his account for the supposed purchase price of bonds was not the equivalent of withdrawing the money and delivering it back to the bank under a specific agreement that it would be held as a special fund for the sole purpose of completing the purchase. There the depositor, acting in anticipation of the purchase, brought $2,100 additional money into the bank from an outside source, but the court held that was not enough because he deposited it in the usual manner, taking the ordinary deposit slip, which merely increased the extent of the existing relationship of debtor and creditor, rather than changing its form. Preference was denied. The court said:

"It would have been equally competent for respondent to have provided for the purchase of the bonds either by the creation of a trust of funds in the hands of the bank, to be used for that purpose, or by establishing with it a credit to be debited with the cost of the bonds when purchased. But only if the former was the method adopted could respondent, upon the bank's insolvency and failure to purchase the bonds, recover the fund or its proceeds, if traceable, in preference to general creditors. See Minard v. Watts (C. C.) 186 F. 245; Fallgatter v. Citizens' National Bank (D. C.) 11 F.(2d) 383; Northern Sugar Corp. v. Thompson (C. C. A.) 13 F.(2d) 829. * * *

"The court below thought that the legal consequence to be attributed to the debiting of the account with the supposed purchase price of the bonds was the same as if the respondent had cashed a check for the amount and had then proceeded to hand the money back to the bank under a specific agreement between him and the bank that the money was to be held as a special fund, for the sole purpose of completing the purchase.. This view is not without support. See Davis v. Mc-

Nair (C. C. A.) 48 F.(2d) 494; State v. Grills, 35 R. I. 70, 75, 85 A. 281; Northwest Lumber Co. v. Scandinavian American Bank, 130 Wash. 33, 225 P. 825, 39 A. L. R. 922; State v. American Exchange Bank, 112 Neb. 834, 201 N. W. 895. See, contra, Beard v. Independent District of Pella City (C. C. A.) 88 F. 375, 381; Mark v. Westlin (D. C.) 48 F.(2d) 609; First National Bank v. Williams (D. C.) 15 F.(2d) 585; Howland v. People, 229 Ill. App. 23; Miller v. Viola State Bank, 121 Kan. 193, 246 P. 517, 48 A. L. R. 373; People v. Merchants' & Mechanics' Bank of Troy, 78 N. Y. 269, 34 Am. Rep. 532; Hecker-Jones-Jewell Milling Co. v. Cosmopolitan Trust Co., 242 Mass. 181, 136 N. E. 333, 24 A. L. R. 1148. Such a procedure, if actually carried out, might afford a basis, which is lacking here, for the inference that respondent, no longer content with the role of creditor, had sought to establish a trust fund. But the mere debiting of his account, without more, for the reimbursement of the bank for the obligation which it was supposed to have incurred or paid, lends no support to such an inference. The cancellation of the credit balance by the debit neither suggests any intention to establish a trust nor points to any identifiable thing which could be the subject of it."

The decision in that case governs with respect to the right to a preference here.

 Turning now to the cross-appeal, it is well settled that the value of a claim, at the date of insolvency of a national bank is the basis upon which distribution should be made. Interest accruing on a claim after insolvency cannot be paid unless the assets are sufficient to make like payment on all others within that class. To allow interest on one while for lack of sufficient assets others in the same class are denied it would not constitute ratable payment. It would result in singling out one and making payment on it according to a different rule from that applied to others in the same class. That cannot be done. It is only after all claims have been discharged in full that interest can be allowed and paid. White v. Knox, 111 U. S. 784, 4 S. Ct. 686, 28 L. Ed. 603; People's Nat. Bank v. Payne (C. C. A.) 26 F.(2d) 208; Gamble v. Wimberly (C. C. A.) 44 F.(2d) 329; Anderson v. Missouri State Life Insurance Co. (C. C. A.) 69 F.(2d) 794.

The decree is reversed, and the cause remanded, with instructions to proceed in accordance with the views expressed herein.

Reversed and remanded.