KENNEDY v. BOSTON–CONTINENTAL NAT. BANK et al.

No. 5423.

District Court, D. Massachusetts.

July 16, 1935.

[redacted]

John P. Wright, Thomas M. Reynolds, Tyler, Eames, Wright & Reynolds, A. K. Cohen, M. E. Bernkopf, and George B. Rowlings, all of Boston, Mass., for plaintiff.

Murray F. Hall, and Goodwin, Proctor & Hoar, all of Boston. Mass., for defendants.

BREWSTER, District Judge.

This is an action brought by the plaintiff against the Boston-Continental National Bank and its receiver, to establish the liability of the bank arising from a certain lease of premises formerly occupied by it. The case was tried without jury.

For the most part the facts are not in dispute, and it may be convenient to note chronologically certain events leading up to this controversy.

1. On October 21, 1929, one Harris Ulin leased to the Boston National Bank premises on Washington and Friend streets, Boston, for the term of fifteen years from February 1, 1930. The rent reserved was $12,000 per year, payable $1,000 on the first day of each month, to which the lessor might add sums paid out by him which, according to the provisions of the lease, the bank covenanted to pay, such as taxes and other assessments upon the leased premises, such additions to be payable at the next fixed rent day after notice of such payment by the lessor.

The lease contained the usual covenants requiring the lessee to pay the rent as stipulated in the lease, all taxes and other assessments assessed upon the demised premises during the term of the lease, to maintain and deliver up the premises with all additions and erections, whether made by the lessor or the lessee, in as good repair and condition in every respect as the same were in at the time of delivery of possession, or might be put in during the continuance of the term thereof, reasonable use and wear, damage by fire or other unavoidable casualties or public taking only excepted, and except as otherwise provided in the lease.

The lease also contained the following covenant:

"The Lessee covenants and agrees to carry during the term hereof rent insurance in a sum sufficient to indemnify the Lessor against loss of rent (including taxes and like charges) hereunder * * *. Such other insurance as may be deemed by the Lessee to be necessary for its protection in the event of the damage or destruction of the demised premises by casualty, avoidable or unavoidable, other than fire, may be carried by it in such amount as it deems necessary * * *."

The lessee was authorized to make, at its own expense, alterations in the building, provided they did not permanently impair the structure thereof, the lessor agreeing that fixtures, furnishings, and equipment installed by the lessee, if detachable and removable without substantial physical damage, might remain the property of the lessee.

The lease contained the condition that in case of default in payment of the rent continuing for 30 days after notice thereof in writing by the lessor, and in case of default in the performance of any of the other covenants of the lease continuing for 30 days after notice thereof by the lessor, then and in that event the lessor had the right to enter and repossess the premises and expel the lessee without being guilty of any trespass and without prejudice to remedies which he might otherwise have for arrears of rent or breach of covenants. Such entry terminated the lease.

There was in the lease the following clause:

"Notwithstanding the determination of this lease and that possession is regained by the Lessor in accordance with the provisions of this paragraph, the Lessee will be and remain liable to the Lessor after such possession is regained for the excess, if any, of the rents reserved in this lease over the rental value of the demised premises for the remainder of the term, and for any loss sustained by the Lessor, through delay, not reasonably avoidable, in reletting the premises, and will pay to the Lessor on demand all expenses incurred by the Lessor in enforcing any obligations of the Lessee under this lease."

2. In December, 1930, the Boston National Bank consolidated with the Continental National Bank and continued the banking business under the charter of the Boston National Bank and under the name of the Boston-Continental National Bank (hereinafter referred to as the bank).

3. The bank defaulted in the payment of the rent due December 1, 1931, and failed to pay the taxes assessed for the year 1931. On December 16, 1931, the bank ceased doing business, and on December 17 the affairs of the bank were taken over by the comptroller of currency who, on December 22, 1931, appointed a receiver who immediately took charge of the bank.

4. On January 8, 1932, the lessor gave to the bank written notice of default on its part to pay the rent and the 1931 taxes. He also gave written notice to the bank that it had failed to perform its covenant to carry rent insurance.

5. On January 13, 1932, the receiver notified the lessor of his election not to take and retain possession of the leasehold and of his intention to vacate the premises. Nevertheless the receiver continued to occupy the premises for some time after this notice.

6. On March 3, 1932, the lessor, named in the lease, assigned to the plaintiff, by written assignment, all the right, title, and interest of the lessor in and to the written indenture of lease, above described, "meaning and intending to include in this assignment all rights heretofore accrued or hereafter to accrue pursuant to the provisions of said lease, including but not limiting the generality of the foregoing, the right to receive and collect all rentals and other payments provided to be paid by the Lessee, which payments are in default, all rights under said written notices sent by the said Ulin (Lessor) to the Lessee, under date of January 8, 1932, * * * all rights, if any, which the said Ulin may have to terminate said lease by reason of the default of the Lessee in the performance of the terms, covenants and conditions of said lease on the part of the Lessee to be kept, performed and observed, all rights, if any, to receive and collect rentals and other payments hereafter accruing and hereafter to be paid, pursuant to the provisions of said lease, and all rights, if any, to receive and collect damages by reason of the defaults, if any, in the performance by the Lessee of the terms, covenants and conditions of said lease on the part of the Lessee to be kept, performed and observed."

7. On August 19, 1932, the receiver wrote the plaintiff the following letter:

"John B. Cunningham, Receiver
"Boston-Continental National Bank
 "60 Devonshire Street
 "Boston, Massachusetts.
 "August 19, 1932.
"Mr. Walter A. Kennedy, Assignee of Harris Ulin, Tyler, Eames, Wright & Hooper, Ames Building, Boston, Massachusetts.
"Dear Sir:

"Notice is hereby given that the undersigned will vacate the premises at #60–64 Washington Street and #54–60 Friend Street on August 31, 1932, in accordance with arrangements entered into today with your attorney Mr. Reynolds.

"It is understood and agreed between us that the two vaults and other furniture, fixtures and equipment belonging to the Boston-Continental National Bank may remain on the premises as our property without further expense until such time as you notify us that you have a prospective tenant.

"It is further understood and agreed between us that the bank's records now located on the upper floors of the premises may remain there in storage at monthly storage charge equal to that which would be charged by a storage warehouse. We will obtain such charges and advise you.

"Kindly acknowledge receipt of this letter by confirming the understanding between us as above set forth.

"Yours very truly,
"[Signed] J. B. Cunningham, Receiver.
"JBC
"MK
 "Registered Mail
 "Return Receipt Requested."

To this letter the receiver received the following reply under date of August 20, 1932:

"Tyler, Eames, Wright & Hooper
"Attorneys and Counsellors at Law
 "Ames Building
 "Boston
 "August 20, 1932.
"John B. Cunningham, Esq., Receiver, Boston-Continental National Bank, 60 Devonshire Street, Boston, Massachusetts.
"Dear Mr. Cunningham:

"We have your letter of the 19th instant addressed to Walter A. Kennedy, as Assignee of Harris Ulin of the lease of the premises 60–64 Washington Street and 54–60 Friend Street, Boston.

"Your letter sets forth our agreement of yesterday. It is understood that the fixtures and equipment belonging to the Bank may remain on the premises until such time as we request you to move them, and that certain records of the Bank may be stored on one of the upper floors of the premises also until such time as we request you to move them. You are. to ascertain and pay us the reasonable value of such storage. All of this property, of course, is to remain on said premises at the sole risk of the Bank and without liability to our client.

"We understand that after you vacate the premises on August 31, 1932, you will return the keys to us, merely retaining one key for access to your property on the premises.

"Thank you for your courtesy in this matter.

"Very truly yours,
"TMR/M [Signed] T. M. Reynolds."

8. On August 19, 1932, the plaintiff, through his attorney, entered upon the leased premises for the declared purpose of terminating the lease in accordance with its provisions, and on August 20 the receiver was notified of this entry. Some time between then and August 31, the receiver vacated the premises. I infer from the evidence that he never removed the vault but did, at some later time, remove the fixtures and equipment.

The unpaid taxes for the year 1931 are $7,402.50. The taxes assessed for the year 1932 amounted to $8,342.50. These taxes were not paid by the receiver.

The plaintiff duly filed with the receiver his claim for arrears of rent and for damages resulting from the breach of the several covenants of the lease.

Plaintiff's claim was rejected, and this suit is brought to establish it against the assets in the hands of the receiver. In his substituted and amended declaration he has included nine counts. Eight of them are for different causes of action. He seeks to recover in these counts as follows:

| | |
|---|---|
| Count 1. Rent from December, 1931, to August, 1932, both inclusive at $1,000 per month | $ 9,000.00 |
| Count 2. Taxes assessed by the city of Boston for the year 1931 | 7,402.50 |

Count 3. Taxes assessed by the city of Boston for the year 1932 ...................... 8,342.50

Count 4. Damages for breach of covenants of the lessee to maintain and leave the premises in good repair......... 6,936.00

Count 5. Excess of rent reserved over fair rental value for that part of the term subsequent to termination of the lease ..................... '82,142.47

Count 6. Loss sustained by plaintiff through delay, not reasonably avoidable, in reletting the premises........... 25,137.55

Count 7. Expenses incurred by lessor in enforcing the obligations of the lessee........ 7,300.00

Count 9. Damages resulting from the alleged breach of covenant to carry rent insurance (no amount alleged)... ———

■ Counts 2, 3, 5, 6, and 7 were embraced in plaintiff's first declaration. The defendants demurred to the declaration as a whole and to each count on the general grounds that the matters alleged did not entitle plaintiff to recover. The demurrer was overruled without opinion by Judge McLellan. On this state of the record I cannot agree that the issues raised in these counts have been adjudicated or that the defendants are now precluded from interposing defenses to these counts. Calder v. Haynes, 7 Allen (Mass.) 387; Schaffran v. Mt. Vernon-Woodberry Mills, Inc. (C. C. A.) 70 F.(2d) 963, 94 A. L. R. 543.

■ I proceed, therefore, to a consideration of plaintiff's rights, asserted in each count of his substituted declaration. Before doing so, however, it may be well to note that this action is brought to adjudicate a disputed claim against the receiver of a national bank, charged with the duty of winding up its affairs in accordance with the banking laws of the United States. This court could take jurisdiction of these parties for no other purpose. Jud. Code § 24 (16), 28 USCA § 41 (16).

The controversy, therefore, does not call for an inquiry into the full extent of the liability of the bank as a banking association arising from the contract of lease. The issues presented by plaintiff's declaration may be reduced to these: To what extent may he establish a claim for rent under the lease; and to what extent may he claim for loss of future rents and for damages arising from the breach of the covenants of the lease?

The adjudication of plaintiff's claim is rendered the more difficult by the fact that he claims under a written lease having elaborate covenants and agreements of doubtful construction. Furthermore, as Mr. Justice Holmes observed in Gardiner v. William S. Butler & Co., 245 U. S. 603, 38 S. Ct. 214, 62 L. Ed. 505:

"The law as to leases is not a matter of logic in vacuo; it is a matter of history that has not forgotten Lord Coke."

It might be added that neither history, Lord Coke, nor the courts in this country have shown much consideration for a landlord who was unfortunate enough to have for its tenant an insolvent corporation.

■ A receiver or trustee in bankruptcy of such insolvent corporation has a right, within a reasonable time, to disavow the lease. Gardner v. Gleason (C. C. A.) 259 F. 755; In re Morris & Rice (D. C.) 258 F. 712; In re Scruggs (D. C.) 205 F. 673; Rosenblum v. Uber (C. C. A.) 256 F. 584; Manhattan Properties, Inc. v. Irving Trust Co., 291 U. S. 320, 54 S. Ct. 385, 78 L. Ed. 824.

■ Such disclaimer does not terminate the term of the lease, or ipso facto effect a surrender. Rosenblum v. Uber, supra. The rejection, therefore, leaves the contract of lease in full force between the landlord and the insolvent tenant. Furthermore, it is settled that the appointment of a receiver by the comptroller of an insolvent national bank does not put an end to the corporate existence of the bank. Chemical National Bank v. Hartford Deposit Co., 161 U. S. 1, 16 S. Ct. 439, 40 L. Ed. 595.

Recent decisions of the Supreme Court have somewhat clarified the principles to be applied in determining what claims for future rent or damages may be proved against a bankrupt estate. See Manhattan Properties, Inc. v. Irving Trust Co., supra; Irving Trust Co. v. Perry, 293 U. S. 307, 55 S. Ct. 150, 79 L. Ed. 379.

■ The cases last cited arose under the Bankruptcy Act (11 USCA), and, while it must be conceded that the provisions of that act do not govern in the liquidation of a national bank [Cook County National Bank v. United States, 107 U. S. 445, 2 S. Ct. 561, 27 L. Ed. 537; Chemical Na-

tional Bank v. Armstrong (C. C. A.) 59 F. 372, 28 L. R. A. 231], the rules announced by the courts with respect to a landlord's rights against insolvent tenants may be helpful in arriving at proper conclusions with regard to the character of the rights asserted, and to what extent the covenants in the lease may serve as a basis for a claim upon the assets administered by the receiver of a national bank.

The National Bank Act (12 USCA §§ 191–194) having provided the exclusive method and manner of distributing assets of a national bank in the process of liquidation, it is necessary first to turn to that act for such light as it may afford upon the issues presented. So far as pertinent, these provisions are:

"Whenever * * * the comptroller shall become satisfied of the insolvency of a national banking association, he may, after due examination of its affairs, * * * appoint a receiver who shall proceed to close up such association. * * *" Section 191.

"The comptroller shall, upon appointing a receiver, cause notice to be given, * * * calling on all persons who may have claims against such association to present the same, and to make legal proof thereof." Section 193.

"The comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and, as the proceeds of the assets of such association are paid over to him, shall make further dividends on all claims previously proved or adjudicated. * * *" Section 194.

■ It is the defendants' contention that only those claims which are grounded on a liability absolutely fixed and owing at the time of insolvency can be allowed to share in dividends. This is said to be the necessary inference from the meaning of the word "ratable" as used in section 194. Authorities seem to support this inference. Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 S. Ct. 360, 365, 43 L. Ed. 640; Balch, Receiver, v. Eugene M. Wilson, 25 Minn. 299, 33 Am. Rep. 467.

In the Merrill Case, the Court distinctly stated:

"The distribution is to be 'ratable' on the claims as proved or adjudicated; that is, on one rule of proportion applicable to all alike. In order to be 'ratable,' the claims must manifestly be estimated as of the same point of time, and that date has been adjudged to be the date of the declaration of insolvency."

■ It is on that theory, I take it, that interest on claims stops with the declaration of insolvency. White v. Knox, 111 U. S. 784, 4 S. Ct. 686, 28 L. Ed. 603; Kershaw v. Jenkins (C. C. A.) 71 F.(2d) 647; American National Bank of Arkansas City v. Williams (C. C. A.) 101 F. 943.

■ And that the cost of collection and attorney's fee cannot be added to the debt. Citizens' Bank & Trust Co. v. Thornton (C. C. A.) 174 F. 752; Dunnagan v. Best (D. C.) 59 F.(2d) 795.

■ And also that, as respects the set-off of cross demand, the rights of the parties became fixed at the moment of insolvency of the national bank. Dakin v. Bayly, 290 U. S. 143, 54 S. Ct. 113, 78 L. Ed. 229, 90 A. L. R. 999.

In Kershaw v. Jenkins, supra, it is said that the distribution must be made on the basis of the value of the claims at the date of insolvency. In numerous cases it has been held that the pivotal date, with reference to which claims are to be adjudicated when presented against the receiver of a national bank, is the date of insolvency of the bank. In re United Grocery Co. (D. C.) 253 F. 267; American Surety Co. of N. Y. v. De Carle (C. C. A.) 25 F.(2d) 18; Steele v. Randall (C. C. A.) 19 F.(2d) 40; In re Battani et al. (D. C.) 6 F. Supp. 376. See, also, Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 45 L. Ed. 822.

The effect of these decisions, as I see it, is to limit provable claims of creditors of a national bank to those that are absolutely owing at the moment of insolvency, and to exclude those that are subject to future contingencies that go to the right of action.

The principle of law to be applied to the determination of the provability of a lessor's claim would, therefore, seem to be somewhat analogous to those that have come to be established in dealing with a landlord's claim against a bankrupt's estate.

On the other hand, it is the plaintiff's view that we must draw our analogies from those cases which have dealt with receivership proceedings in equity. He relies upon William Filene's Sons Co. v. Weed, 245 U. S. 597, 38 S. Ct. 211, 62 L.

Ed. 497; Gardiner v. William S. Butler & Co., supra; International Paper Co. v. Priscilla Co., 281 Mass. 22, 183 N. E. 58.

He deduces from them the rule that a claim accruing within a reasonable time before distribution may participate, the proper test of provability being the possibility of determining the worth of the claim at a time consistent with the expeditious settlement of the receivership estate. See 46 Harvard Law Review, page 1116; Pennsylvania Steel Co. v. New York City Ry. Co. (C. C. A.) 198 F. 721, 740.

█ From the cases cited it appears that the appointment of a receiver by a court in equity does not have the same effect as the filing of a petition in bankruptcy. Lawful claims maturing after the appointment, but within a reasonable time before distribution, are not excluded. It is important, however, to note that in the Filene Case and in the Pennsylvania Steel Co. Case, the court clearly pointed out that such equity receivership was a proceeding not based upon any statutory authority. In this respect a receiver appointed by a comptroller is not comparable with an equity receiver, since the liquidation of a national bank is a statutory proceeding.

█ From my consideration of the cases, I have reached the conclusion that in adjudicating a claim against the receiver of a national bank the true rule to be applied to the claim of a lessor under a written lease which has been disaffirmed is as follows: If the claim is grounded on a liability absolutely and unconditionally fixed at the time of insolvency, and capable of being determined as to the amount when the claim is presented, it may be allowed if seasonably presented. The right to establish such a claim is not defeated by the mere fact that, in order to effect a termination of the lease, the lessor must take certain steps. But his right to take these measures cannot be subject to contingency. Thus, if a breach of a covenant to pay rent entitles the landlord to proceed to terminate the lease by notice and entry, and, notwithstanding such termination, to enforce the tenant's agreement to pay a sum as liquidated damages which is capable of being ascertained at the time of presentation, a claim growing out of such contractual obligation is entitled to share in the ratable distribution. This rule does not conflict with Merrill v. National Bank of Jacksonville, supra, where the court said, 173 U. S. 131, at page

142, 19 S. Ct. 360, 365, 43 L. Ed. 640, that "all rights, legal or equitable, existing at the time of the commission of the act of insolvency which led to the appointment of the receiver, * * * are preserved. * * *"

And again, "The requirement of equality of distribution among creditors by the national banking act involves no invasion of prior contract rights of any such creditors, and ought not to be construed as having, or being intended to have, such a result." See, also, Chemical National Bank of Chicago v. Hartford Deposit Co., 156 Ill. 522, 41 N. E. 225.

The rule is consistent also with those cases which hold that even in the equity proceedings contingent claims cannot be allowed. Pennsylvania Steel Co. v. New York City Ry. Co., supra; Wake Development Co. v. Auburn-Fuller Co. (C. C. A.) 71 F.(2d) 702.

█ If we apply this rule to the several counts of plaintiff's declaration, we arrive at the following results:

The plaintiff is entitled to recover for the installment of rent due December 1, 1931. He is not entitled to recover for the installments of rent accruing after December 17, the date of insolvency. This, on the ground that rent is a sum stipulated to be paid for the use and enjoyment of land. No debt is created until the time stipulated for payment arrives. The right, therefore, was subject to contingencies on December 17, 1931. In re Roth & Appel (C. C. A.) 181 F. 667, 31 L. R. A. (N. S.) 270.

█ The plaintiff is entitled to recover for the 1931 taxes. These accrued prior to insolvency, and the liability of the bank to pay these taxes had become fixed, and the amount was determinable. This is so, whether the taxes be treated as a part of the rent, or otherwise.

The plaintiff is not entitled to recover for the taxes assessed by the city of Boston for the year 1932. Liability for these taxes had not accrued, and on December 17, 1931, were contingent for the same reasons that the subsequent installments of rent are deemed to have been contingent.

█ Referring to count 4 of plaintiff's declaration, which is for breach of the covenant to maintain and to leave the premises in good repair, it appears from the evidence that this claim of $6,936 is largely made up of an estimate of the fair

and reasonable cost of restoring the premises to the same condition structurally as they were in at the time of the execution of the lease. Four thousand five hundred dollars is the estimated cost of removing the vaults which the bank had installed on the premises. The lease gave the bank the right to make these alterations, but it did not give it the right to claim ownership in any but movable fixtures. I do not understand that whenever the lease is terminated the lessee is required to put the premises back into the same condition structurally as they were in when the lease was executed. Cawley v. Jean, 218 Mass. 263, 105 N. E. 1007. All that this covenant requires is that the premises in their transformed condition shall be returned to the landlord in a reasonably good state of repair, reasonable use and wear excepted.

The most, therefore, that the plaintiff can properly ask under this count is $2,436 on the evidence before me.

The question still remains whether, under the rule above developed, the court can include this amount in plaintiff's claim. I cannot escape the conviction that, in justice and equity, the landlord should be allowed to prove for this item. The receiver remained in possession of the premises until August, and I assume that he later removed the counters, grillwork, and other fixtures attached to the premises. Apparently, in so doing, he substantially damaged the building. I think it is possible to consider that any contingency respecting this item went only to the amount of it. Under the circumstances found to exist on December 17, 1931, damages were bound to result from the vacating of the receiver and removal of fixtures. By mutual agreement he was allowed to do this, and that fact affords an additional reason why a claim for the damages sustained by the removal should be allowed.

 As to counts 5, 6, and 7, these are all based upon the covenant of the lease, which is set forth above, providing for the lessee's liability for (a) liquidated damages; (b) loss of future rents; and (c) expenses in enforcing the obligations of the lease.

Construing this clause most favorably to the landlord, it contains a twofold obligation: An agreement to pay liquidated damages, and an agreement of indemnity.

The first obligation I regard as fixed and absolute without any contingency which goes to the right of action on this agreement. I do not agree with defendants' counsel that the words "be and remain liable" mean that this liability for liquidated damages must await the termination of the specified term before the extent of it can be determined. Not only was the liability fixed, but the measure of the damages was also defined in the contract of lease. Irving Trust Co. v. Perry, supra.

It was established at the trial that the rental value of the leased premises for the remainder of the term was $67,250. The rent reserved for that same period was $149,400.

With respect to the agreement to indemnify, the situation is quite different because the liability is held to be dependent wholly upon future events and contingent both in right and in amount. Manhattan Properties, Inc., v. Irving Trust Co., supra; Providence Building Co. v. Atlantic National Bank et al. (D. C.) 228 F. 814; Wake Development Co. v. Auburn-Fuller Co., supra; Woodbury v. Sparrell Print, 187 Mass. 426, 73 N. E. 547; Merchants' National Bank v. Ryerson, 251 Mass. 314, 146 N. E. 659; Zevitas v. Adams, 276 Mass. 307, 117 N. E. 114.

I rule, therefore, that the plaintiff is entitled to recover on the fifth count, and find, according to stipulation of counsel, that the amount of the damages is $56,-580.70.

The plaintiff is not entitled to recover on the sixth and seventh counts. As to both of these counts, there is the additional reason that if plaintiff was allowed to recover upon them he would be recovering both liquidated damages for the whole remainder of the term and also actual damages. I do not read the covenant as one by which the bank agreed to pay double damages in case of failure on its part to perform its covenants. As to the seventh count, there is the further ground for rejecting plaintiff's claim, suggested in the case of Citizens' Bank & Trust Co. v. Thornton, supra, which denied a creditor of a national bank the right to add to his claim the cost of collection and attorney's fee.

 In the ninth count, added by amendment to the substituted declaration, the plaintiff seeks to establish a claim based upon the covenant in the lease relating to rent insurance. Whether, in view of plaintiff's recovery of liquidated damages, he should be allowed to recover upon

this covenant, is a question which need not be determined, inasmuch as I am unable to find any breach of that covenant, as I construe it.

Rent insurance, according to the common acceptation of the word in the insurance field, means insurance against loss of rent which may result from fire or other casualties named in the policy. It does not contemplate, as the plaintiff contends, a contract of indemnity whereby the insurer becomes a surety for the lessee, agreeing to make good any failure on the part of the lessee to pay its rent. There was evidence tending to show that the lessor made some effort to secure this form of indemnity, and a bonding company was found willing to write the contract upon the deposit of certain collateral. The proposition was submitted to the president of the bank, but nothing more was ever done about it. Policies of insurance were carried by the lessee, for the benefit of the lessor, which contained the usual rent insurance clause, and which I find was all that the bank was required to do by the terms of the lease.

I therefore find that the plaintiff is not entitled to recover upon the ninth count.

The defendants have devoted a considerable portion of their brief to a consideration of the question whether there had been at any time a lawful termination of the lease. They invoke the ancient doctrine, which seems still to obtain in Massachusetts, that there can be no assignment of a right of entry which had accrued prior to the assignment, and that therefore the entry made by the plaintiff, as assignee of the original lessor, was ineffectual to work a termination.

The plaintiff meets this contention with the argument that the assignment gave to the plaintiff a right to enter as agent for the landlord. While I am rather inclined to the latter view, I do not consider that the question is at all material to the present controversy. I am not undertaking to determine what rights the plaintiff, or his assignor, may have against the bank as a surviving corporate shell. Furthermore, it would seem to me that the acts of the parties would constitute a surrender of the term by mutual agreement. Talbot v. Whipple, 14 Allen (Mass.) 177; Caruso v. Shelit, 282 Mass. 196, 184 N. E. 460; Taylor v. Kennedy, 228 Mass. 390, 117 N. E. 901.

To recapitulate: The plaintiff recovers on his declaration in this action as follows:

Count 1, including interest to December 17, 1931.......... $ 1,002.75

Count 2, including interest to December 17, 1931.......... 7,552.17

Count 4, including interest to December 17, 1931.......... 2,436.00

Count 5, including interest to December 17, 1931.......... 56,580.70

Total .................. $67,571.62

On the remaining counts plaintiff is not entitled to recover.

The defendants in this case have filed a declaration in set-off, alleging that the original lessor, Harris Ulin, owes the bank $23,638.82, according to three promissory notes made by said Ulin, payable to the Boston-Continental National Bank and now held among the assets of the receiver. I find that the amount due the bank by the said Ulin upon these three notes, with interest to December 17, 1931, is $22,638.82. Since the plaintiff, as assignee of a nonnegotiable legal chose in action, takes subject to rights of set-off against his assignor, Lewis v. Club Realty Co., 264 Mass. 588, 163 N. E. 172; Levenbaum v. Hanover Trust Co., 253 Mass. 19, 148 N. E. 227; Massachusetts Gen. Laws (Ter. Ed.) c. 231, § 5, he is entitled to a judgment for the excess of his claim over the amount owing to the bank by his assignor Ulin.

Judgment for plaintiff in the sum of $44,932.80 may be entered.